UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JOHN Q. ADAMS,<br><br>            Plaintiff,<br><br>   v.<br><br>JOHN McDONALD et al.,<br><br>            Defendants. | 3:06-CV-00707-LRH-VPC<br><br>ORDER |

Presently before the court is Defendants John McDonald, Jannet Vreeland, Tom Judy, Julie Railey, and Nevada System of Higher Education's ("NSHE") Motion for Summary Judgment (#31[1]). Plaintiff John Adams filed an opposition (#34) to which Defendants replied (#35).

**I.      Facts and Procedural History**

Viewing the evidence in the light most favorable to Plaintiff, the following narrative describes the facts of this case.

Plaintiff is a former employee of the University of Nevada School of Medicine. The School of Medicine is a school within the University of Nevada, Reno ("UNR"), which is an institution within Defendant NSHE. Plaintiff began his employment with the School of Medicine in 1992; and in or around 1995, Plaintiff became Director of Pharmacies. UNR's pharmacies are part of the

---

[1]Refers to the court's docket number

Nevada Family Practice Residency Program, Inc. ("NFPRP"), a nonprofit corporation.

In July 2005, Defendant Tom Judy, the Associate Vice President for Business and Finance at UNR, was told that employees at a UNR campus pharmacy reported Plaintiff was stealing money from a pharmacy cash register. Judy was directed to look into the matter. In his investigation, Judy discovered that one of the witnesses to the alleged theft was Defendant Julie Railey, Business Manager at the pharmacy. After speaking with Railey, Judy decided an audit of the UNR pharmacy was warranted. UNR auditor Joan Tarver was directed to conduct the audit.

Tarver conducted the audit and issued a report on September 27, 2005. The report stated there was a significant lack of controls to safeguard the pharmacy's assets and to ensure the proper recording of accounting transactions. The report also noted a lack of preapproval and review procedures over expenditures incurred and authorized by Plaintiff. These purchases included cell phones, conference fees, airfares, meals, hotel stays, and items for donation. According to the report, Plaintiff charged these items on a pharmacy credit card and paid these charges with a pharmacy check. The auditor also prepared a supplemental report focusing on Plaintiff's expenditures. This report detailed purchases that were purportedly inconsistent with university policy.

After receiving these reports, Judy decided to refer the matter to the Nevada Attorney General. Furthermore, Defendant John McDonald, Dean of the School of Medicine, reassigned Plaintiff and decided not to continue Plaintiff's employment. In accordance with this decision, McDonald met with Plaintiff on July 24, 2006, and told him his contract would not be renewed. During this meeting, Plaintiff signed a terminal contract specifying that June 30, 2007, would be his last day of employment.

On July 22, 2006, an article appeared in the *Reno Gazette Journal* reporting that the Nevada Attorney General was investigating Plaintiff on suspicion that he used a university credit card to purchase personal items. The article quotes from an affidavit in support of an application for a

search warrant.

After the *Reno Gazette Journal* published the article, former UNR President Joseph Crowley authored a memorandum to the NSHE Board of Regents and Chancellor Jim Rogers.  The memorandum acknowledged the newspaper article, stated that Plaintiff had been reassigned, and further stated that Plaintiff's duties did not include direct financial or management responsibility.

Plaintiff filed the present lawsuit on December 20, 2006, asserting eight claims for relief: (1) First Amendment retaliation, (2) deprivation of due process (3) Fourth Amendment violation, (4) defamation, (5) false light, (6) stigma-plus, (7) intentional interference with an existing and prospective contractual relationship, and (8) breach of contract.

## II.    Legal Standard

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party."  *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001).

In order to successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact.  *Reese v.*

*Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to establish a genuine dispute; there must be evidence on which the jury could reasonably find for the plaintiff. *See id.* at 252.

**III.  Discussion**

  **A.  Eleventh Amendment Immunity**

  As a threshold issue, the court must address whether Defendant NSHE is entitled to Eleventh Amendment immunity. In its motion for summary judgment, NSHE argues that Plaintiff cannot seek injunctive relief against a state entity, citing *Tennessee v. Lane*, 541 U.S. 509, 517 (2004). The cited portion of *Tennessee* quotes the Eleventh Amendment and states generally that the Amendment "renders the State immune from 'any suit in law or equity, commenced or prosecuted . . . by Citizens of another State, or by Citizens or Subjects of any Foreign State." *Tennessee*, 541 U.S. at 517. While Defendants' opening brief does not raise Eleventh Amendment immunity generally–rather the brief raises immunity only in response to Plaintiff's breach of contract claim–Defendants' citation to *Tennessee* is sufficient to raise the issue of whether NSHE is entitled to Eleventh Amendment immunity in this case.

  The court finds that NSHE has not shown it is entitled to Eleventh Amendment immunity at this juncture. As support for the notion that it is a state entity entitled to immunity, NSHE cites *Johnson v. University of Nevada*, 596 F. Supp. 175 (D. Nev. 1984) and *Meza v. Lee*, 669 F. Supp. 325 (D. Nev. 1987). These cases, however, analyzed whether the University of Nevada and the

4

1 University of Nevada, Reno Police Department were entitled to Eleventh Amendment immunity.
2 In this case, however, NSHE is the named defendant at issue. While it could very well be that
3 NSHE is entitled to Eleventh Amendment immunity for the same reasons that the University of
4 Nevada and the University of Nevada, Reno Police Department were entitled to immunity in
5 *Johnson* and *Meza*, NSHE has presented no evidence or argument to that effect. Therefore, the
6 court will continue to consider Plaintiff's claims against NSHE.

### B. First Amendment Retaliation

Defendants' motion for summary judgment argues that Plaintiff has not presented a triable issue on his First Amendment retaliation claim. "To state a First Amendment claim against a public employer, an employee must show: 1) the employee engaged in constitutionally protected speech; 2) the employer took 'adverse employment action' against the employee; and 3) the employee's speech was a 'substantial or motivating' factor for the adverse action." *Marable v. Nitchman*, 511 F.3d 924, 929 (9th Cir. 2007). With respect to the first element that the employee engaged in constitutionally protected speech, the Supreme Court has held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006).

Defendants argue Plaintiff has failed to present any evidence that he engaged in constitutionally protected speech. Plaintiff, in response, argues that he engaged in protected speech by delivering a $100,000 check from Dr. Peck, his former boss, to Defendant McDonald; and McDonald retaliated against this speech because he disliked the message conveyed by the check.

The court concludes that any message conveyed by delivery of the check was made pursuant to Plaintiff's official duties as Director of Pharmacies.[2] The inquiry into whether employee speech

---

[2] Whether public-employee speech is constitutionally protected is a question of law. *See Marable*, 511 F.3d at 930.

5

1  is pursuant to employment duties is a practical one.  *Marable*, 511 F.3d at 932.  In *Marable v.*
2  *Nitchman*, the Ninth Circuit observed that whether the speech at issue is internal to the employment
3  setting or concerns the subject matter of a plaintiff's employment is not dispositive.  *Id.*  However,
4  the court also found that a plaintiff's job description is informative and that "[t]he proper inquiry is
5  a practical one [into] . . . the duties an employee actually is expected to perform . . . ."  *Id.* at 933
6  (*quoting Garcetti*, 547 U.S. at 424-25).

7  In view of this framework, the court finds that Plaintiff's delivery of a $100,000 check to
8  McDonald falls well within the category of speech that is pursuant to official duties.  As an initial
9  matter, Plaintiff practically admitted in his deposition that delivery of the check was pursuant to his
10 official duties: "I made [McDonald] aware that it was not a John Adams' decision, that it was a Dr.
11 Peck and NFPRP, that we were to–we were here to try to help him."  (Adams Dep. (#34), Ex. 1 at
12 113:12-14.)  Thus, even if McDonald was unsure about what message, if any, Plaintiff intended to
13 convey by delivery of the check, Plaintiff made clear that the decision to deliver the check was not
14 his own, but rather it was a decision made by Dr. Peck and NFPRP.

15 Moreover, NFPRP's articles of incorporation demonstrate that the transfer of its funds to
16 the School of Medicine is one of NFPRP's official purposes:

> [T]he object and purposes of the corporation and the nature of the business to be carried on by it are as follows:
>
> . . .
>
> (I) To provide or make available funds for expenditure by the administration of the University of Nevada School of medicine, for general or specific academic purposes particularly in the field of family medicine, including without limitation, defraying capital and ordinary expenses . . . .

22 (Am. and Restated Articles of Incorporation (#34), Ex. C at 1-2.)  Although Plaintiff presents
23 evidence that his "duties were to open, develop a pharmacy, make it prosperous" (Adams Dep.
24 (#34), Ex. 1 at 9:13-14)–presumably to present the negative inference that his duties did not include
25 transferring funds–this testimony is neither dispositive nor persuasive.  Plaintiff stated in his

6

deposition that he delivered the check at the direction of this then-boss, Dr. Peck.  (Adams Dep. (#34), Ex.1 at 113:5-11.)  Although it may have been abnormal for Plaintiff to deliver funds to the School of Medicine, this abnormality does not preclude the transfer from being an official act. Rather, as the Supreme Court stated in *Garcetti*, "[t]he proper inquiry is a practical one [into] . . . the duties an employee actually is expected to perform."  *Garcetti*, 547 U.S. at 424-25.  Because Plaintiff presented uncontradicted evidence that his boss told him to deliver the check, the transfer was pursuant to his official duties.  (*See* Adams Dep. (#34), Ex. 1 at 5-9.)  Summary judgment on Plaintiff's First Amendment retaliation claim is therefore granted.

### C.  Contract and Due Process Claims

Defendants next argue that Plaintiff can present no triable issue as to his second, seventh, and eighth claims for relief, which, respectively, assert claims for deprivation for due process, tortious interference with an existing and prospective contractual relationship, and breach of contract.  In support, Defendants initially argue Plaintiff could have been fired without cause; therefore, Plaintiff did not have a property interest upon which to predicate his current claims.  The court disagrees.

As Defendants acknowledge in their motion, Title 2, Chapter 5, Section 5.9.1(c) of the NSHE Code provides that "notice of nonreappointment to employment of nontenured . . . administrative faculty . . . shall be given . . . [a]t least 365 calendar days in advance of the termination of each succeeding employment contract . . . ." (NSHE Code (#31), Ex. M.)[3]  Thus, when NSHE formed an employment relationship with Plaintiff, it agreed he would not be fired without notice.  Although Defendants attempt to avoid this construction by arguing Plaintiff was only entitled to notice and not continued employment, this argument ignores that his employment

---

[3] Title 2, Chapter 5, Section 5.4.3 of the NSHE Code provides that "[t]he provisions of the Nevada System of Higher Education Code, in their entirety, shall be part of the terms and conditions of every employment contract, except as may be varied in writing by the parties to the contract."  Defendants do not contend Plaintiff did not have an employment contract with NSHE.

7

could only end after 365 days of notice.  Plaintiff therefore could not be fired before these 365 days without being deprived of a term of his employment contract.

Defendants also argue that even if Plaintiff could not have been fired without cause at any time, Plaintiff received more than 365 days of notice; thus, there was no breach of contract or deprivation of due process.  In support of this argument, Defendants submit a document purporting to notify Plaintiff that his employment would terminate on June 30, 2007.  (Notice of Nonreappointment (#31), Ex. B.)  The bottom of this documents reads that "[t]he undersigned attests that the above notice was personally delivered to the above-named person on May 2, 2006."  (*Id.*)  Thus, Defendants argue, because Plaintiff was notified on May, 2, 2006, that his last day of employment would be June 30, 2007, Plaintiff was given 424 days notice that his employment would terminate.

Plaintiff responds that he was not given the requisite 365 days notice and submits his own declaration stating the following:

> [T]he first time I had notice that my contract would not be renewed was when the Dean called me and asked me to come into his office, where I signed the contract and dated it as of that day.  I had not seen it before this and had not received any prior notice of non-reappointment orally or in writing before this date.  Attached hereto as Exhibit 1 is a true and correct copy of the document that I received and signed on July 24, 2006.

(Adams Decl. (#34).)

In response to this evidence, Defendants argue that Plaintiff's declaration is a "sham" document intended only to contradict his prior deposition testimony in an effort to create an issue of fact for trial.  While in some respects Plaintiff's declaration seems implausible in light of his prior deposition testimony, the discrepancies between these two pieces of evidence are not so great as to warrant a finding that Plaintiff's declaration is a sham.

In *Messick v. Horizon Industries Inc.*, 62 F.3d 1227, 1231 (9th Cir. 1995), the Ninth Circuit set forth the standard for determining whether a declaration executed subsequent to a deposition can create a genuine issue of fact:

> While this court has held that a party may not "create his own issue of fact by an affidavit contradicting his prior deposition testimony", the non-moving party is not precluded from elaborating upon, explaining or clarifying prior testimony elicited by opposing counsel on deposition; minor inconsistencies that result from an honest discrepancy, a mistake, or newly discovered evidence afford no basis for excluding an opposition affidavit.

In his deposition, Plaintiff testified that he received notice of his nonreappointment in a meeting with McDonald, but Plaintiff was not certain about the date when this event occurred. (Adams Dep. (#35), Ex. R at 130:2-24.) Plaintiff also was equivocal about whether he received the "Notice of Nonreappointment" or some other document in this meeting. (*See* Adams Dep. (#36), Ex. R at 129:23-130:24.) Viewing the evidence in the light most favorable to Plaintiff, the court cannot find that Plaintiff's deposition so contradicts his declaration that it warrants being found a sham. The inconsistencies between the deposition and declaration could have been the result of an honest discrepancy or a mistake. While Defendants' evidence may make Plaintiff's explanation seem implausible, such a credibility determination is not for the court at summary judgment.

Although Plaintiff's breach of contract claim and procedural due process claim survive summary judgment, these claims may not be maintained against all the defendants named in this action. Defendants point out that Vreeland, Judy, and Railey did not participate in the decision not to renew Plaintiff's contract. Plaintiff has not presented any evidence to controvert this assertion. As such, Defendants Vreeland, Judy, and Railey are entitled to summary judgment on Plaintiff's breach of contract claim and due process claim. Finally, because Plaintiff had no employment contract McDonald, McDonald is also entitled to summary judgment on Plaintiff's breach of contract claim.

While Plaintiff has demonstrated a genuine issue on his breach of contract claim and due process claim, he has shown no facts that would suggest any of the defendants tortiously interfered with an existing or prospective contractual relationship. As a matter of law, a party cannot tortiously interfere with its own contract. *Blanck v. Hager*, 360 F. Supp. 2d 1137, 1154 (D. Nev. 2005); *Consolidated Generator-Nevada, Inc. v. Cummins Engine Co., Inc.*, 971 P.2d 1251, 1255

(Nev. 1998) (stating that a prospective contractual relationship must be between the plaintiff and a third party); Restatement (Second) of Agency § 248 cmt c. (1958) ("A master is not liable in tort for the act of a servant who improperly causes the master to break a contract with third persons or with one of his own servants."). Thus, no claim against NSHE may lie.  Furthermore, all the other defendants in this action were agents of NSHE acting within the scope of their employment and therefore unable to tortiously interfere with any existing or prospective contract NSHE had with Plaintiff.  *See Alam v. Reno Hilton Corp.*, 819 F. Supp. 905, 911 (D. Nev. 1993).

The court also finds that Plaintiff cannot succeed in a substantive due process claim as alleged in his second claim for relief.  There is no evidence that would suggest Defendants have engaged in conduct that would shock the conscience or interfere with rights implicit in the concept of ordered liberty.  *See Matsuda v. City and County of Honolulu*, 512 F.3d 1148, 1156 (9th Cir. 2008).

**D.  Fourth Amendment Violation**

Defendants argue they are entitled to summary judgment on Plaintiff's third claim for relief, which reads as follows: "The conduct of the Defendants leading to the search of Plaintiff's home and seizure of his property subjects them to liability under 42 U.S.C. § 1983 for a violation of Plaintiff's right to be free from unreasonable searches and seizures under the Fourth Amendment to the United States Constitution . . . ."  (Compl. (#1) at ¶ 37.)  Defendants contend they are entitled to summary judgment on this claim because they do not have the capacity to violate Plaintiff's Fourth Amendment rights.

It is not clear whether Defendants are arguing that they had nothing to do with the complained-of search or if they are arguing they are private actors and therefore cannot be subject to § 1983 liability.  If Defendants are arguing that they are private actors and therefore outside of § 1983's purview, they–with the possible exception of Defendant Railey–are likely incorrect.  Here, Defendants McDonald, Vreeland, and Judy are all state employees and therefore could presumably

violate Plaintiff's Fourth Amendment rights. Nonetheless, interpreting Defendants' argument as a contention that Plaintiff has not presented evidence that Defendants caused a Fourth Amendment violation, the court agrees.

In the present case, the only contention Plaintiff makes to show Defendants caused a Fourth Amendment violation is his bare allegation that Defendant Railey "spoke to the investigator and made false statements and accusations." (Opp'n (#34) at 3-4.) This allegation, however, is not evidence and therefore insufficient to create a triable issue. The court is aware that Defendants have preemptively raised the issue of whether by turning over the audit report to the Attorney General's office, Defendant Judy violated Plaintiff's Fourth Amendment rights. In addressing this evidence, Defendants argue that they did not participate in the decision to seek a search warrant; they did not obtain the search warrant; and they did not participate in the search warrant's execution. Therefore, Defendants argue, they did not violate Plaintiff's Fourth Amendment rights.

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . *subjects, or causes to be subjected*, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." 42 U.S.C. § 1983 (emphasis added). As this text makes explicit, in order to succeed in a § 1983 action, a plaintiff must show a state actor *caused* him or her to suffer the deprivation of a constitutional right. The Ninth Circuit discussed this point in *Arnold v. International Business Machines Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981):

> In a section 1983 cause of action the plaintiff must show that the defendants have deprived him of a right. The language of the statute shows this can be a direct or indirect deprivation. It creates liability for any person who "subjects, or causes to be subjected" particular persons to the deprivation of particular rights. Thus, liability under section 1983 can be established by showing that the defendant personally participated in a deprivation of the plaintiff's rights, or caused such a deprivation to occur.

(citation omitted).

11

In *Arnold*, the defendant, IBM, argued it was not subject to liability under § 1983 because it did not proximately cause the police to search the plaintiff's residence. The record showed that IBM's involvement in a criminal investigation–which ultimately focused on plaintiff–included (1) placing one of its employees on a task force to investigate wrongdoing, (2) providing money to the task force, and (3) supplying witnesses to testify before a grand jury. *Id.* at 1357. The Ninth Circuit nonetheless held that the plaintiff had not shown sufficient evidence upon which a reasonable jury could find IBM was the proximate cause of the search. In its reasoning the court stated that "[i]t is true that IBM's involvement was certainly more than that of a mere complaining witness. The Seventh Circuit has held, however, that a person who supplies inaccurate information that leads to an arrest is not involved in joint activity with the state and thus not liable under section 1983." *Id.* at 1357-58.

While there was no indication in *Arnold* that IBM provided inaccurate information to the authorities (thus making the court's reference to the Seventh Circuit case dictum), this court finds the Ninth Circuit's reasoning persuasive. As such, even assuming Judy provided inaccurate information to the authorities, that act would be insufficient to constitute a Fourth Amendment violation.

### E. Defamation

Defendants also move for summary judgment on Plaintiff's fourth claim for relief, which alleges that Defendants Judy, Railey, and McDonald breached a duty to exercise reasonable care with respect to communications about UNR's audit. In support of their motion, Defendants argue Plaintiff has failed to present any evidence that Defendants published a false statement concerning Plaintiff. They also assert that even if they made statements to law enforcement officials concerning Plaintiff, these statements are entitled to immunity.

The court concludes that summary judgment for Defendants on Plaintiff's defamation claims is warranted. The only communications Plaintiff argues constitute defamation are (1)

Railey's statements to law enforcement officers and Dean McDonald and (2) the memorandum issued to the UNR Board of Regents, which Plaintiff argues was "caused" by McDonald. With respect to Defendant Railey's statements, Plaintiff submits McDonald's deposition testimony that Railey complained to McDonald that there was a pattern of misappropriation of funds by Plaintiff at the university pharmacy. (McDonald Dep. (#34), Ex. 2 at 14:19-21, 15:12-21.) The only evidence on record concerning Railey's communication with law enforcement is her deposition testimony that she was contacted by an Wayne Fazzino, an investigator. (Railey Dep. (#31), Ex. F at 29:5-9.)

Concerning Railey's statements to law enforcement, Plaintiff has failed to present any evidence that her conversation with Fazzino included a defamatory statement. With respect to Railey's statements to McDonald, the court concludes that her statements fall within the common-interest privilege; therefore, because Plaintiff has failed to present evidence that the statements were made with actual malice, summary judgment is warranted on Plaintiff's defamation claim.

In *Circus Circus Hotels, Inc. v. Witherspoon*, 657 P.2d 101 (Nev. 1983), the Nevada Supreme Court discussed the common-interest privilege:

> A qualified or conditional privilege exists where a defamatory statement is made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a right or a duty, if it is made to a person with a corresponding interest or duty. Whether a particular communication is conditionally privileged by being published on a "privileged occasion" is a question of law for the court; the burden then shifts to the plaintiff to prove to the jury's satisfaction that the defendant abused the privilege by publishing the communication with malice in fact.

*Circus Circus Hotels, Inc. v. Witherspoon*, 657 P.2d 101, 105 (Nev. 1983) (internal quotation marks omitted); *see also Jesinger v. Nev. Fed. Credit Union*, 24 F.3d 1127, 1134 (9th Cir. 1994). In the present case, Railey had an interest in the trustworthy operation of the pharmacy, where she worked as a business manager. *Cf. Bank of America Nev. v. Bourdeau*, 982 P.2d 474, 476 (Nev. 1999) (holding that a bank's communication to an FDIC examiner was privileged because the bank had an interest and duty to cooperate with the examiner to ensure that officers of

13

another bank are qualified and experienced). Furthermore, McDonald, as dean of the School of Medicine, had an interest in the trustworthy operation of the pharmacy, which he oversaw. The common-interest privilege therefore applies to Railey's statement to McDonald. Because Plaintiff has presented no evidence that Railey's statement was made with malice in fact, Plaintiff cannot succeed in a defamation claim against her.

Concerning the memorandum issued to the UNR Board of Regents, Defendants argue that Plaintiff has failed to present a prima facie case because there is no evidence that the statements contained within the memorandum are false. The court agrees.

It is axiomatic that "[o]ne who publishes a defamatory statement of fact is not subject to liability for defamation if the statement is true." Restatement (Second) of Torts § 581A. The memorandum addressed to the Board of Regents states that the *Reno Gazette Journal* published an article reporting that Plaintiff "was a subject of an investigation carried out on the basis of evidence uncovered through an internal audit process." (Regents Information (#31), Ex. L.) The memorandum also states that Plaintiff had been assigned to a position with "no direct financial or management responsibility." (*Id.*) Plaintiff does not dispute that he was in fact the subject of an investigation and that he had been reassigned to a position planning a college of pharmacy. (*See* McDonald Dep. (#31), Ex. D at 43:24-44:5; McDonald Dep. (#34), Ex. 2 at 8:22-9:2.) Because Defendants have shown the memorandum's contents are true, summary judgment on Plaintiff's defamation claim is granted.

**F. False Light**

Plaintiff's fifth claim for relief asserts three theories of liability upon which to advance his false light claim: (1) Defendants leaked the allegations of the audit and search warrant application to the *Reno Gazette Journal*, which resulted in an article placing Plaintiff in a false light; (2) the *Reno Gazette Journal* article was republished in *Nevada News* by Jane Tors with the agreement of Defendants Vreeland and Judy; and (3) allegations of the audit and the search application were

14

channeled to members of the Board of Regents.

Defendants respond to Plaintiff's first theory by pointing out that he suffers from a complete failure of proof. The court agrees. Each of the individual defendants, with the exception of Vreeland, has offered his or her own deposition testimony asserting he or she never leaked the search warrant affidavit to the press. (Judy Dep. (#31), Ex. E at 42:5-10; Railey Dep. (#31), Ex. F at 33:4-9; McDonald Dep. (#31), Ex. D at 28:19-25, 29:15; McDonald Dep. (#31), Ex. D at 35:9-20.) This argument and evidence is more than sufficient to meet Defendants' initial moving burden. Plaintiff, in response, offers no evidence that any of the defendants contacted the *Reno Gazette Journal*.

Defendants do not specifically address the second theory upon which Plaintiff asserts his false light claim. However, when addressing Plaintiff's defamation claim, Defendants argue that Plaintiff has not shown that any of the defendants published a false statement concerning him. (Defs' Mot. for Summ. J. (#31) at 20.) Pointing out this lack of evidence is sufficient to shift the burden to Plaintiff to show Defendants placed Plaintiff in a false light by republishing an article in the *Nevada News*. Plaintiff has failed to make any such showing. In fact, Plaintiff presents no evidence that the *Nevada News* article even exists.

With respect to Plaintiff's third theory, Defendants point out that the so-called allegations channeled to the Board of Regents were in fact the memorandum authored by former president Joseph Crowley. As stated above, Defendants have presented undisputed evidence that the contents of this memorandum were true. While Nevada has not explicitly recognized the false light tort, the Restatement (Second) of Torts provides that "it is essential to [the false light tort] that the matter published concerning the plaintiff is not true." Restatement (Second) of Torts § 652E cmt. a (1977); *see also Logan v. District of Columbia*, 447 F. Supp. 1328, 1333 (D.D.C. 1978). Because Plaintiff has not presented any evidence that the memorandum contained false statements, Defendants are entitled to summary judgment on Plaintiff's false light claim.

15

**G. Stigma-Plus**

Plaintiff's sixth claim for relief alleges that Defendants are liable for a stigma-plus due process violation pursuant to 42 U.S.C. § 1983. There are two ways to prove a § 1983 claim for stigma-plus: (1) an injury to reputation caused the denial of a federally protected right or (2) an injury to reputation was inflicted in connection with a federally protected right. *See Cooper v. Dupnik*, 924 F.2d 1520, 1532 (9th Cir. 1991). Defendants first argue that Plaintiff has failed to show he suffered a due process violation; thus, he cannot succeed in a claim for stigma-plus. Because, as discussed above, Plaintiff has presented a triable issue regarding his procedural due process claim with respect to NSHE and McDonald, Defendants' argument is not well-taken.[4]

Nevertheless, Plaintiff has failed to present evidence would support a stigma-plus claim against either NSHE or McDonald. Before NSHE can be subject to § 1983 liability, it must a "person" within the meaning of that statute, that is, a municipality or other local government unit. *See Monell v. Dep't of Soc. Services*, 436 U.S. 658, 690 (1978). Furthermore, if NSHE is in fact a municipality or other local government unit (rather than an arm of the state subject to Eleventh Amendment immunity) Plaintiff must show NSHE subjected him to an unconstitutional custom or policy. *See id.* at 690-91. Plaintiff has failed to make such a showing. There is no evidence NSHE was had a policy or custom of stigmatizing employees while depriving them of their due process rights. There is also no evidence that any defamatory statements were made by a defendant with final policymaking authority. *See Botello v. Gammick*, 413 F.3d 971, 979 (9th Cir. 2005) (discussing municipal § 1983 liability when an individual causing a constitutional violation has final policymaking authority). Moreover, with respect to McDonald, there is no allegation or evidence that he made any statement that could be deemed stigmatizing. *See Ulrich v. City & County of San Francisco*, 308 F.3d 968, 982 (9th Cir. 2002) (stating that in order to assert a valid

---

[4]Defendants have succeeded, however, in showing as a matter of law that Defendants Vreeland, Railey and Judy did not inflict a due process violation. Accordingly, these defendants are entitled to summary judgment on Plaintiff's stigma-plus claim.

stigma-plus claim, a plaintiff must show "the public disclosure of a stigmatizing statement by the government, the accuracy of which is contested . . . ."). Summary judgment is therefore granted on Plaintiff's stigma-plus claim.

**IV.    Conclusion**

Defendants have shown that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law on Plaintiff's First Amendment relation claim, Fourth Amendment claim, defamation claim, stigma-plus claim, tortious interference with an existing and prospective contractual relationship claim, and false light claim. Plaintiff, however, has succeeded in presenting a genuine issue with respect to his breach of contract claim against NSHE and his procedural due process claim against McDonald and NSHE.

Finally, the court acknowledges there are still issues of law not raised in the present motion that may render a trial unnecessary on some of Plaintiff's claims. For instance, NSHE may be able to show that it is entitled to Eleventh Amendment immunity. As such, this court will grant Defendants thirty days to move again for summary judgment if they so desire.

IT IS THEREFORE ORDERED that Defendants' motion for summary judgment (#31) is GRANTED in part and DENIED in part.

IT IS FURTHERED ORDERED that Defendants are granted 30 days to move again for summary judgment. Plaintiff is granted 15 days to file an opposition, and Defendants are granted 10 days to file a reply.

IT IS SO ORDERED.

DATED this 15th day of August 2008.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

17